UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **PETRO-GUARD COMPANY, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-04-91 |
| | § | |
| **PETROGEN, INC. and** | § | |
| **LEO WILLIAM KERRIGAN,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Pending before the Court is Plaintiff Petro-Guard Company, Inc.'s ("Petro-Guard") Motion to Remand (Dkt. #6). After examining the motion, the response, and the applicable law, the Court is of the opinion that Petro-Guard's motion should be DENIED.

### Procedural Background

Petro-Guard filed this action on September 15, 2004, in the County Court at Law No. 1 in Calhoun County, Texas, alleging conversion, unjust enrichment, fraud, and negligent misrepresentation, and seeking a temporary injunction. Defendant Petrogen was served on September 15, and timely filed a notice of removal on October 14, 2004, based on diversity jursidiction under 28 U.S.C. § 1332. Defendant Leo William Kerrigan ("Kerrigan") gave his consent to removal. Petro-Guard moved to remand this case on November 9, 2004, claiming that complete diversity of citizenship among the parties does not exist because one of the Defendants, Petrogen, Inc. ("Petrogen"), is a corporation with its principal place of business in Texas.

### Standard of Review

A defendant may remove to federal court under 28 U.S.C. § 1441 "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C.

§ 1441(a). 28 U.S.C. § 1332(a) provides that federal district courts have original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). A defendant's ability to remove a case to federal court solely on the basis of diversity of citizenship amongst parties is limited, however, by 28 U.S.C. § 1441(b), which states that cases are removable on the basis of diversity "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

When a case is removed to federal court, the removing party bears the burden of establishing facts necessary to show that removal is proper. *Eastus v. Blue Bell Creameries*, 97 F.3d 100, 106 (5th Cir. 1996). The Supreme Court has held that diversity of citizenship is assessed at the time the action is filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004). For purposes of diversity, a corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332; *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 875 (5th Cir. 2004). To determine a corporation's principal place of business, the Fifth Circuit applies the "total activity" test. *Teal*, 369 F.3d at 876. This test includes the "nerve center" and the "place of activities" tests. *Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992). The business's nerve center is where the "corporation's business is ultimately directed and controlled." *Id.* (citing *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959)). The business's place of activities is the center of the corporation's "production or service activities." *Id.* (citing *Kelly v. U.S. Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960)). The principal place of business inquiry is a factual one, and after examining all the facts of the case, a court balances them to determine whether the "nerve center" or the "place of activities" test dominates. *Teal*, 369 F.3d at 876; *see Grinter v. Petro*, 846 F.2d 1006 (5th Cir. 1988). "[W]hen considering a corporation whose

2

operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business." *Teal*, 369 F.3d at 876 (citing *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 406 (5th Cir. 1987) (quotation omitted).

## Discussion

The only contested issue for jurisdiction is Petrogen's principal place of business.[1] Petro-Guard contends Petrogen's main headquarters is in Houston, Texas, and therefore, the Court should remand the case to state court. Petrogen, on the other hand, contends that the Court should deny the motion to remand because it alleges that Petrogen, at the time of removal, was a "far-flung" corporation with many sites of operations and therefore its principal place of business lies at the nerve center. Petrogen asserts the nerve center at the time of removal was Vancouver, Canada, which according to Petrogen, satisfies the jurisdictional requirement. The Court agrees, as explained below.

### A. Nerve Center Test

The Fifth Circuit has used several factors to evaluate a corporation's "nerve center." These include the "exclusivity of decision making," the "degree of autonomy delegated to other locations," the location of the corporate offices, and the amount of "managerial authority" at a given location. *Olsen*, 818 F.2d at 410, 411, 412. The nerve center has also been referred to as the "brain" of the corporation. *Teal*, 369 F.3d at 876. The court in *Teal* found Teal's nerve center was in Calgary, when "its shareholders and directors meetings are held in Calgary, its president and corporate accountants reside in Calgary, and all major decisions...are made in Calgary." *Id.*

---

[1] It is uncontested that Petrogen is incorporated in Colorado, and its parent company Petrogen Corp. is incorporated in Nevada. It is also uncontested that Petro-Guard is incorporated and has its principal place of business in Texas, and that Kerrigan is a resident of Tennessee, not Texas.

3

Petrogen submits that at the time of the filing, in October 2004, all major decisions relating to Petrogen were made by the parent company Petrogen Corp. In his affidavit to the Court, Sacha Spindler, CEO of Petrogen Corp., stated that at the time of removal, Petrogen and Petrogen Corp. had the same officers and directors: Spindler, CEO, Neville Henry, President, Tim Russell, Executive Vice President, William Kerrigan, Executive Vice President, and Louis Fruchier, Vice President. Of these, Neville Henry and Tim Russell work from Houston, Texas. Spindler further attests that all in-person board meetings occurred in Vancouver, and most board meetings via telephone were initiated from Vancouver. Petrogen submits its corporate attorney and former director is Peter Jensen, who lives and works in Vancouver. In addition, Petrogen has the following financial ties to Vancouver: its accountant lives in Vancouver; its auditing firm is a Vancouver firm; its financial records are kept in Vancouver; Petrogen's client trust account was in Vancouver; and, 90% of all corporate checks were written in Vancouver. Spindler's affidavit and Kerrigan's deposition testimony show that at the time of removal, Petrogen had no corporate offices anywhere but Vancouver. In this case, the management decisions are made in Vancouver, the parent company which directly controls Petrogen is head-quartered in Vancouver, and all financial accounting, auditing, and billing occurs in Vancouver. As such, this Court finds the nerve center of Petrogen lies in Vancouver, Canada.

### B. Place of Activities Test

The Court now turns to the "place of activities" analysis to determine whether or not Petrogen is a "far-flung" corporation. In examining the "place of activity" of a corporation, the Fifth Circuit looks at the corporation's place of operations. *See Nauru Phosphate Royalties v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir. 1998). Under this test, the principal place of business is the center of its production or service activities. *Harris*, 961 F.2d at 549 n.4. In *Teal*, the court found Teal's place of activity lay in Texas because its day-to-day operations were in Texas, its only wells

4

were in Texas, its revenue came solely from Texas, and Teal presented no evidence to establish "far-flung" or varied activities in other states. *Teal*, 369 F.3d at 876-77.

In this case, Petrogen presented sufficient evidence and an affidavit from Spindler demonstrating its significant presence not only in Texas, but also in Wyoming and Mississippi. Kerrigan's deposition testimony further described day-to-day operations that occurred similarly in Wyoming and Texas. These operations in Texas did not bring the company into any more contact with the Texas economy than the Wyoming operations did with the Wyoming economy, rendering neither more amenable to the principal place of business designation. In fact, Petrogen's corporate representative testified that Petrogen has not yet received any revenue from any operations, and at the time of removal had invested more capital in the other operations than in Texas.

Specifically, Kerrigan testified that at the time of removal, Petrogen had a post office box and an answering service in Greenway Plaza, Houston, Texas, which was contracted for in Vancouver. (Kerrigan Dep. 31). Kerrigan explained that Petrogen's activities included ongoing oil and gas operations in Wyoming and Mississippi, as well as Texas, and land evaluation in Colorado. (Kerrigan Dep. 64). Kerrigan stated he spent 25% of his time on the Texas operations, and part of this time was actually spent in Tennessee. (Kerrigan Dep. 64). At the time of removal, and in the months before that, Kerrigan testified that Petrogen was reworking old wells in Wyoming and Texas. Although Petro-Guard attempts to imply Petrogen participated heavily in the Texas economy, Kerrigan explained that Petrogen used mostly subcontractors as part of operations at these wells, and had expended similar resources in Wyoming. (Kerrigan Dep. 58). At the time of removal, Petrogen had worked on two wells in Texas, and had an option on other land in Texas.[2] (Kerrigan Dep. 38, 54).

---

[2] It is undisputed that Petrogen intended to make Houston its headquarters. However, there was a disclaimer, and at present, there is still a disclaimer, on Petrogen's website that any representations are forward-looking and should not be relied upon for any reason. Petro-Guard

5

However, it is clear from Spindler's affidavit that operations in Wyoming and Mississippi were far more advanced than those in Texas.

As a result, this Court finds that at the time of removal, Petrogen was a company with "far-flung" activities and with no one center of activity. Therefore the Court finds that the nerve center test predominates the analysis in determining Petrogen's principal place of business. *See Teal*, 369 F.3d at 876. Because the Court finds Petrogen's nerve center is Vancouver, Canada, the Court concludes Petrogen's principal place of business lies in Vancouver, Canada. As such, this case satisfies the jurisdictional requirements of 28 U.S.C. §§ 1332 and 1441.

### Conclusion

For the foregoing reasons, Petrogen's removal to federal court was proper under diversity jurisdiction. Therefore, Petro-Guard's Motion to Remand is DENIED.

It is so ORDERED.

Signed this 15th day of August, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

claims that equitable estoppel principles should be applied to these representations to find Texas citizenship. But, this jurisdictional inquiry is a purely factual one, not an opportunity to examine the subjective understanding of the Plaintiff. Furthermore, the case cited by Petro-Guard, *Payphone LLC v. Brooks Fiber Comm. Of R.I.*, 126 F. Supp.2d 175 (D.R.I. 2001), is inapposite to the facts at hand. The defendant in *Payphone* did not have many places of activity, and tried to argue its company was indistinguishable from its parent corporation. *See id.* at 179-80. In this case, Petrogen has several areas of operations, its directors are the same as that of the parent company, and at the time of removal, Petrogen had no corporate office in Texas. As a result, Petro-Guard's estoppel argument does not apply.